Filed 2/9/21  P. v. Brooks CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

THE PEOPLE,

    Plaintiff and Respondent,

v.

DONALD VINCENT BROOKS,

    Defendant and Appellant.

E072085

(Super. Ct. No. SWF1600759)

OPINION

APPEAL from the Superior Court of Riverside County.  Stephen J. Gallon, Judge.  Affirmed.

Cathryn L. Rosciam, and Arthur B. Martin, under appointments by the Court of Appeal for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I.

## INTRODUCTION

Defendant and appellant, Donald Vincent Brooks, had a daughter with the victim, Jane Doe. After they separated, defendant voluntarily gave up his custody rights to their daughter. Defendant and Jane Doe agreed that defendant could visit his daughter, but only on agreed-upon terms. Defendant became increasingly angry at Jane Doe when she would not let him visit their daughter at his request, and began sending Jane Doe threatening text messages. Defendant also showed up unannounced at Jane Doe's boyfriend's workplace and at his daughter's school when Jane Doe was picking her up, even though Jane Doe told him not to do so.

A jury convicted defendant of one count of stalking (Pen. Code, § 646.9, subd. (a); count 1)[1] and one count of making an obscene or threatening electronic communication with the intent to annoy (§ 653m, subd. (a); count 3). The trial court sentenced defendant to three years' formal probation.

On appeal, defendant argues (1) substantial evidence does not support his convictions; (2) section 653m, subdivision (a) is unconstitutionally overbroad and vague; (3) the trial court prejudicially erred by failing to instruct the jury on the "good faith exception" to section 653m; (4) the trial court prejudicially erred by failing to instruct the jury that the First Amendment protects "angry and emotional speech"; (5) the trial court prejudicially erred by excluding evidence of two investigating officers' racial bias; (6) the

---

[1] Unless otherwise indicated, all future statutory references are to the Penal Code.

2

trial court prejudicially erred by denying his *Pitchess*[2] motion; and (7) cumulative error requires reversal of his convictions. We reject defendant's contentions and affirm the judgment.

## II.

### FACTUAL AND PROCEDURAL BACKGROUND

Defendant and Jane Doe had a daughter in 2009. About two years later, defendant and Jane Doe separated. They reached a formal custody agreement which included defendant paying Jane Doe child support and their daughter visiting defendant at his house.

Over time, defendant's relationship with Jane Doe deteriorated. Defendant became verbally abusive toward Jane Doe and was often angry at her. On one occasion, Jane Doe and defendant got into an argument during which defendant said, "he was on his way to [Jane Doe's] house and he was going to stomp the life out of [her]." Jane Doe did not think defendant was joking, so she called the police.

Eventually, Jane Doe thought defendant's verbal abuse might stop if she stopped requesting that he pay child support. Jane Doe offered to stop requesting child support from defendant if he would agree to change their custody agreement so that Jane Doe would have full custody of their daughter. This meant that if defendant wanted to see their daughter, he would have to ask for Jane Doe's permission and they would have to come to mutually agreeable terms for the visit. Defendant agreed to the arrangement.

---

[2] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*)

Nonetheless, defendant often became angry with Jane Doe if she did not allow him to see their daughter at his request. On one such occasion in October 2015, defendant texted Jane Doe, saying that he was "overdue to act a fool" and "overdue to clown," and that Jane Doe "understand[s] things better" when defendant "show[s] [his] ass." Defendant told Jane Doe that he knew where she lived, he would "show up whenever [he got] ready," he did not "give a f--k who is there," and that the police would "take their time" if she called them. He also told her, "I pray that you get beat within an inch of your life," that she needed to be "flushed," and that "[f]olks talked me out of hurting you. Sometimes I wish [they] wouldn't have. You need to be hurt to get a clue." Defendant testified that he meant Jane Doe needed to get physically hurt so she could understand how she was hurting their daughter. Jane Doe interpreted these text messages to mean that defendant was going to "act crazy" and come over to her house and hurt her.

On another occasion, defendant texted Jane Doe and told her that he was going to her boyfriend's workplace to talk to him. Defendant then texted Jane Doe, "Nope I'm not going to do that. I have other plans for you. What I have learned over the years nothing beats the element of surprise. I'm telling you it's going to be like nothing you have ever heard of. It will take the wind out of your sail. Lol. Patience is a virtue. What's wrong [Jane Doe] are you upset because I am in the know? . . . [Y]ou aren't to[o] vigilant. You walked right by me one night. I'm smooth." Jane Doe found these text messages "scary" because she believed they showed defendant was following her.

4

Around Christmas in 2015, Jane Doe refused to allow defendant to visit with their daughter on his terms. Defendant responded by texting Jane Doe, "I will see you Christmas Eve night. If you want problems you have them." Defendant later replied, "I will be there Christmas Eve. Try me [Jane Doe] I am beggging [sic] you. If anyone touche[s] me they will get hurt. That is a promise. . . . My fingers are crossed. Google when fathers snap. I will be there at 9:00 Christmas Eve I don't care who is there they are a fool if they get in my way. . . . [I]t's time for me to let loose. I told your family to stay away. You say I'm a [n-word] I will show you one [Christmas Eve] Night."

Defendant also told Jane Doe many times that she should kill herself. He texted her things such as, "[j]ump and get it over with," and "[p]lease off yourself I know I deal with an idiot when I deal with you. I don't wish death on anyone but I would be happy when you are gone." Defendant also texted Jane Doe stories of women and mothers who had committed suicide. These text messages made Jane Doe feel threatened and scared because she thought defendant might kill her.

When Jane Doe refused to let defendant pick their daughter up from school, he responded by texting Jane Doe, "You have been lucky not getting hurt," and that "somebody talked [him] out of hurting" her. Defendant also said he would go to Jane Doe's boyfriend's workplace and "stir up some shit." Defendant continued, "Nobody will fuck with me either. I'm crazy and dangerous at the same time." Later that day, defendant texted Jane Doe a picture of his wristband, which showed that he had been at

5

her boyfriend's workplace. Defendant said, "This place has tight security. I got through with ease."

Defendant showed up at his daughter's school the next day even though Jane Doe told him he could not pick her up. Defendant walked over to Jane Doe's car and said that he was there to pick up his daughter and that he would hurt anyone who got in his way while making a punching motion with his fist. Afraid, Jane Doe drove away and called 911.

Police arrived and escorted Jane Doe away from the school, but defendant followed them. When Jane Doe reached the city limits, the officer stopped escorting her. Defendant waved at the officer and continued following Jane Doe.

Defendant was charged with one count of stalking (§ 646.9, subd. (a); count 1) for his behavior toward Jane Doe between October 2015 and April 2016, one count of making a criminal threat (§ 422; count 2); and three counts of making an obscene or threatening electronic communication with the intent to annoy (§ 653m, subd. (a); counts 3-5). The jury convicted defendant of stalking (count 1), and of making an obscene or threatening electronic communication with the intent to annoy on count 3, which pertained to defendant's text messages to Jane Doe in October 2015, but acquitted defendant on counts 2, 4, and 5.

III.

DISCUSSION

A. *Substantial Evidence Supports Defendants' Convictions*

Defendant contends his convictions must be reversed because they are not supported by substantial evidence. We disagree.

1. *Applicable Law and Standard of Review*

"When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] . . . We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] A reviewing court neither reweighs evidence nor reevaluates a witness's credibility." (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

"'Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. If the circumstances

reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.'" (*People v. Thomas* (1992) 2 Cal.4th 489, 514.) We may reverse a conviction for a lack of substantial evidence only if it appears "'"that upon no hypothesis whatever is there sufficient substantial evidence"'" to support the conviction. (*People v. Cravens* (2012) 53 Cal.4th 500, 508.)

     2. *Analysis*

Stalking someone in violation of section 649.9, subdivision (a) has three elements. "The first element of stalking is 'willfully, maliciously, and repeatedly follow[ing] or willfully and maliciously harass[ing] another person.'" (*People v. Uecker* (2009) 172 Cal.App.4th 583, 594.) "Harassing" another person "means engages in a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, torments, or terrorizes the person, and that serves no legitimate purpose." (§ 646.9, subd. (e).) "'[C]ourse of conduct' means two or more acts occurring over a period of time, however short, evidencing a continuity of purpose. Constitutionally protected activity is not included within the meaning of 'course of conduct.'" (§ 646.9, subd. (f).) "The second element is 'mak[ing] a credible threat.'" (*People v. Uecker*, *supra*, at p. 594.) "The third element of stalking is intending to place the victim in reasonable fear for safety." (*Id.* at p. 595.)

The record amply supports the jury's finding that all three elements were satisfied. Over several months, defendant sent Jane Doe many threatening text messages. Among

8

other threatening comments, defendant told Jane Doe that (1) he knew where she lived; (2) he would show up to her house more than once; (3) he was "overdue" to act out violently; (4) she needed "to get hurt"; (5) she should be more "vigilant"; (6) she walked past him in public, but she did not see him because he's "smooth"; (7) she should kill herself; (8) he was "crazy" and "dangerous"; (9) she was "lucky" that he had not hurt her; and (10) people had talked him out of hurting her.

Defendant also showed up to their daughter's school to pick her up the day after Jane Doe told him not to do so. While there, defendant told Jane Doe he would pick up his daughter and that he would hurt anyone who got in his way and made a punching motion. Defendant then followed Jane Doe as she was escorted away from the school by a police officer. When they reached the city limits and the officer stopped escorting Jane Doe, defendant continued following her.

From this evidence, the jury could reasonably conclude that (1) defendant intentionally and repeatedly harassed or followed Jane Doe several times; (2) credibly threatened her; and (3) intended his conduct to make Jane Doe fear for her safety. Substantial evidence thus supports defendant's stalking conviction (count 1).

We reach the same conclusion as to count 3. To convict defendant of violating section 653m, subdivision (a), the jury had to find that, in October 2015, defendant (1) contacted Jane Doe "by means of an electronic communication device"; (2) that he did so willfully and with the intent to annoy her; and (3) that, in doing so, he "addresse[d]" "obscene language" or a "threat to inflict injury" to Jane Doe. (§ 653m, subd. (a).)

9

Substantial evidence supports the jury's findings that all three elements were satisfied. There is no dispute that defendant sent Jane Doe several text messages in October 2015. Defendant also does not dispute that several of the "scary" texts he sent Jane Doe in October 2015 were intended to annoy and irritate her. Nor does he dispute that many of those texts contained threats to hurt Jane Doe. On this record, the jury reasonably concluded that defendant violated section 653m, subdivision (a).

Defendant argues his stalking conviction must be reversed because his conduct served a "legitimate purpose" of trying to see his daughter. (See § 646.9, subd. (e) [harassment "serves no legitimate purpose"].) For the same reason, he argues his conduct was in "good faith" and therefore his conviction on count 3 must be reversed. (See § 653m, subd. (a) ["Nothing in this subdivision shall apply to telephone calls or electronic contacts made in good faith."].)[3]

We disagree. The case defendant mainly relies on, *J.J. v. M.F.* (2014) 223 Cal.App.4th 968, does not support his position that his communications to Jane Doe were legitimate and in good faith. In that case, a mother made several calls to her child's father about whether their son had a jacket. (*Id*. at p. 976.) She made the "repeated calls because her very young son was ill, the weather was cold when she took him to daycare in the morning, and the child had only the one warm jacket." (*Ibid*.) There was nothing

---

[3] Because we reject this argument, we need not address the People's argument that "[b]ecause a lack of good faith is not an element of the offense, it follows that the prosecution had no burden of proof in this respect and [defendant's] sufficiency claim must fail."

10

threatening about the calls, and "[a]s a mother concerned about her child's health, she had a legitimate and nonharassing reason to contact the father." (*Ibid*.) She therefore did not violate section 653m, subdivision (a) because she "made the phone calls in good faith" because they only concerned her child's well-being. (*Ibid*.)

The same cannot be said about defendant's text messages to Jane Doe. Although defendant's desire to see his daughter was legitimate and he sometimes expressed that desire in good faith, several of his text messages were not sent in good faith or for a legitimate purpose. As defendant acknowledged, he sent Jane Doe several non-threatening text messages pleading with her to let him see their daughter and asking her "to change how she handled things" related to their daughter. Those text messages were legitimate and sent in good faith. (See *J.J. v. M.F.*, *supra*, 223 Cal.App.4th at p. 976.)

But we cannot conceive of any legitimate reason for defendant's telling Jane Doe that she "needed to get hurt," he knew where she lived, he was "overdue to act a fool," she should "jump and get it over with," she "understands better when [he] show[s] his ass," or that people had dissuaded him from hurting her. There was similarly no legitimate reason for defendant to show up at his daughter's school, make threatening comments to Jane Doe, and then following her while a police officer escorted her away. It does not matter that defendant sent threatening text messages to Jane Doe because he wanted to see his daughter. (See *People v. Johnson* (2015) 61 Cal.4th 734, 755 [defendant liable under section 653m for making threatening phone calls even though he intended calls to stop wife's affair].) Because the jury could reasonably conclude that

11

defendant's conduct was not legitimate or made in good faith, substantial evidence supports defendant's convictions.

B. *Whether Section 653m, Subdivision (a) Is Unconstitutionally Overbroad or Vague*

Defendant asserts his conviction on count 3 must be reversed because section 653m, subdivision (a) is unconstitutionally overbroad and vague. We disagree that the statute is unconstitutionally overbroad. We also conclude that even if it is unconstitutionally vague, defendant fails to show any resulting prejudice.

*People v. Hernandez* (1991) 231 Cal.App.3d 1376, forecloses defendant's argument that section 653m, subdivision (a) is overbroad. There, the court considered and rejected the defendant's overbreadth challenge to section 653m, subdivision (a), concluding that the statute is not unconstitutionally overbroad. (*Id*. at p. 1382.) We find *Hernandez* persuasive. We therefore follow *Hernandez* and conclude that section 653m, subdivision (a) is not unconstitutionally overbroad.

Defendant argues section 653m, subdivision (a) is vague because it criminalizes "obscene" language, but does not explain whether language is "obscene" if the recipient is offended by it or whether the average person would find it offensive.

Section 653m, subdivision (a), however, "not only prohibits intentional and annoying phone calls using obscene language, but also intentionally annoying phone calls which threaten to inflict injury." (*People v. Hernandez*, *supra*, 231 Cal.App.3d at p. 1385.) The evidence that defendant sent Jane Doe threatening text messages is

12

substantial while there is minimal, if any, evidence or argument that he sent her "obscene" text messages. Indeed, the People emphasize on appeal that the text messages were threatening, but do not argue they were obscene. Defendant also does not point to anything in the record that suggests the jury convicted him for sending "obscene" text messages rather than for sending threatening ones.

It is thus highly likely that jury convicted defendant for sending threatening text messages, not "obscene" ones. So even if the obscene language in section 653m, subdivision (a) is unconstitutionally vague and thus the trial court erred in instructing the jury on obscenity, the error was harmless under any standard because it is not reasonably probable that the jury convicted defendant for sending Jane Doe "obscene" text messages rather than threatening ones. (See *People v. Watson* (1956) 46 Cal.2d 818, 836; *Chapman v. California* (1967) 386 U.S. 18, 24.)

C. *The Trial Court Did Not Have to Instruct the Jury on the Good Faith Exception to Section 653m, Subdivision (a)*

Section 653m, subdivision (a) provides that it does not "apply to telephone calls or electronic contacts made in good faith." Defendant contends the trial court erred by failing to sua sponte instruct the jury on this provision because, in his view, the lack of good faith is an element of a section 653m, subdivision (a) offense that the People had to prove. Reviewing the claim de novo, we disagree. (*People v. Guiuan* (1998) 18 Cal.4th 558, 569.)

13

"In criminal cases, even in the absence of a request, a trial court must instruct on general principles of law relevant to the issues raised by the evidence and necessary for the jury's understanding of the case." (*People v. Martinez* (2010) 47 Cal.4th 911, 953.) This obligation includes instructing on all elements of a charged offense. (*People v. Cummings* (1993) 4 Cal.4th 1233, 1311, overruled on another ground in *People v. Merritt* (2017) 2 Cal.5th 819, 831.) "When a statute first defines an offense in unconditional terms and then specifies an exception to its applicability, the exception is generally an affirmative defense to be raised and proved by the defendant." (*People v. Lam* (2004) 122 Cal.App.4th 1297, 1301.)

For instance, in *People v. Lam*, *supra*, 122 Cal.App.4th at page 1301, the court addressed section 247, subdivision (b), which provides: "Any person who discharges a firearm at an unoccupied motor vehicle or an uninhabited building or dwelling house is guilty of a public offense punishable by imprisonment in the county jail for not more than one year or in the state prison. This subdivision does not apply to shooting at an abandoned vehicle, unoccupied vehicle, uninhabited building, or dwelling house with the permission of the owner." The *Lam* court explained that the statute "defines the offense first in unconditional terms before it specifies the exception to the statute's applicability," and thus the statute "shows the owner's nonconsent is not an element of the crime for which the prosecution has the burden of proof." (*People v. Lam*, *supra*, at p. 1301.) Instead, "it is an affirmative defense to be raised and proved by the defendant." (*Ibid.*)

*People v. Luera* (2001) 86 Cal.App.4th 513 involved similar statutory provisions in section 311.11, which prohibits the possession of child pornography. Subdivision (e) of section 311.11 provides in part that "[t]his section does not apply to drawings, figurines, statues, or any film rated by the Motion Picture Association of America [(MPAA)]." The *Luera* court found that "an MPAA rating simply operates as a kind of affirmative defense under section 311.11." (*People v. Luera*, *supra*, at p. 520.)

Section 653m, subdivision (a) is analogous to the statutes at issue in *Lam* and *Luera*. Section 653m, subdivision (a) defines the three elements of the offense, and then states that the statute does not "apply to telephone calls or electronic contacts made in good faith." The good-faith exception therefore is an affirmative defense to a charge under section 653m, subdivision (a) that defendant had to prove. The People did not need to prove that defendant did not send his text messages to Jane Doe in good faith.[4] The trial court therefore did not err by not instructing the jury on the good-faith exception to section 653m, subdivision (a).

D. *The Trial Court Did Not Prejudicially Err By Failing to Instruct the Jury on Constitutionally Protected Speech*

Defendant contends the trial court erred by failing to sua sponte instruct the jury that "angry and emotional speech" is protected under the California and federal

---

[4] We decline to address defendant's other arguments on this issue made for the first time in his reply brief. (See *People v. Duff* (2014) 58 Cal.4th 527, 550, fn. 9 [declining to address claim of ineffective assistance of counsel raised by defendant for the first time in reply brief].)

constitutions, which he claims was an affirmative defense to his offenses. Even if the trial court erred in failing to instruct the jury about constitutionally protected speech, any error was harmless beyond a reasonable doubt. (See *People v. Salas* (2006) 37 Cal.4th 967, 984 [holding trial court's failure to instruct on an affirmative defense was harmless beyond a reasonable doubt].) This is because the record shows defendant engaged in a harassing, threatening course of conduct toward Jane Doe.

As outlined in more detail above, defendant's conduct was not in good faith and several of his October 2015 text messages to Jane Doe served no legitimate purpose. Defendant told Jane Doe she "needed to be hurt," that he was "overdue to act a fool," "overdue to clown," and that he knew where Jane Doe lived and would "show up whenever." Defendant also told Jane Doe she needed to be "flushed," that he would come to her house and "let loose," and that he was "crazy and dangerous." He told Jane Doe she was not "vigilant" because she walked by him in public without noticing because he is "smooth."

None of this speech can be considered constitutionally protected as mere "angry and emotional speech." These and other texts to Jane Doe were threatening, harassing, and intended to "annoy" and "irritate" her. They made Jane Doe fear for her safety, they were not in good faith, and they served no legitimate purpose. We therefore conclude that, even if the trial court instructed the jury on constitutionally protected speech, no reasonable juror would conclude that all of defendant's speech underlying counts 1 and 3

was simply "angry and emotional" speech.  The trial court therefore did not prejudicially err by not instructing the jury on constitutionally protected speech.

E.  *The Trial Court Properly Denied Defendant's Motion in Limine*

Defendant contends the trial court prejudicially erred by excluding evidence that two investigating officers are biased against African Americans.  We disagree.

1.  *Additional Background*

Defendant moved in limine to admit evidence that two officers who investigated defendant's offenses, Investigators Cornett and Pelato, have a history of racial animus toward African Americans, including African American Riverside County Sheriff's deputies, such as defendant.  Defendant offered the testimony of two former Riverside County Sheriff's deputies, Harold Odom and Terry Jones.  He claimed Odom would testify that Pelato was disciplined for using excessive force and a racial epithet against an African American arrestee, and Jones would testify that Cornett "often negatively brought up race as a topic of conversation," and thought an African American officer was promoted because of his race.  Jones would explain that Cornett was internally investigated for his comments about the officer's promotion.

Defendant explained that Jones would also testify that Cornett and Pelato investigated him on an allegation of domestic violence and found illegal steroids in his home when they executed a search warrant.  Jones pled guilty to a lesser charge and was fired based on a finding, which was later reversed, that he lied to the investigators about the steroids.  According to Jones, Pelato's report about the incident did not include

17

Jones's exculpatory statements and Pelato and Cornett recommended Jones's bail be set at an excessive amount. Defendant claimed Cornett's report into his offenses was "similarly one-sided" and Cornett likewise requested that defendant's bail be set at an excessive amount. Defendant also suggested that Cornett was responsible for downloading defendant's cell phone information, and the download was incomplete in that it lacked "call logs for certain crucial dates."

The trial court denied defendant's motion under Evidence Code section 352. The trial court found there was "no nexus or correlation" between Cornett's and Pelato's alleged racial animus and defendant's conduct. The court reasoned that the alleged missing data from defendant's cell phone "can be explored without the bias allegation" and the "major component of this case" was Jane Doe's credibility.

2. *Applicable Law and Standard of Review*

"Under Evidence Code section 352, the probative value of the proffered evidence must not be substantially outweighed by the probability that its admission would create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (*People v. Cole* (2004) 33 Cal.4th 1158, 1195.) Because the decision to admit or exclude evidence under Evidence Code section 352 is committed to the trial court's discretion, we will not disturb a trial court's exercise of that discretion """except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.""" (*Uspenskaya v. Meline* (2015) 241 Cal.App.4th 996, 1000-1001.)

18

### 3. *Analysis*

We conclude the trial court did not abuse its discretion under Evidence Code section 352 by excluding evidence of Cornett's and Pelato's alleged racial animus toward African Americans. Evidence of racial animus can be relevant to show bias. (See Evid. Code, § 210; *People v. Quartermain* (1997) 16 Cal.4th 600, 628 [defendant's use of racial epithets against murder victim relevant to show premeditation and deliberation].) But the trial court still may exclude relevant evidence if its probative value is not substantial. (Evid. Code § 352; *People v. Hill* (1995) 34 Cal.App.4th 727, 738.)

Here, the trial court found there was "no nexus or correlation" between Cornett's and Pelato's alleged racial animus and defendant's offenses. In other words, the trial court found that, even if true, evidence related to their prejudice against African Americans did not have substantial probative value. The trial court reasonably reached this conclusion and thus did not abuse its discretion.

As the trial court correctly observed, defendant's claim that Cornett manipulated or deleted defendant's cell phone data "could be explored" without delving into Cornett's purported racial bias. Cornett's and Pelato's alleged discriminatory comments and behavior toward African American colleagues likewise had little, if any, relevance to defendant's offenses. For one thing, Jane Doe was the principal witness. As the trial court correctly noted, the credibility of her testimony was the "major component" of this case.

Defendant also did not dispute sending Jane Doe the text messages underlying his convictions.  Nor did he dispute Jane Doe's accusations against him.  His defense was that he was entitled to say what he said to Jane Doe because he wanted to see his daughter.  Thus, the trial court reasonably found that Cornett's and Pelato's alleged racial bias, even if true, had minimal relevance to the evidence and the issues for the jury to decide.  The trial court's ruling was not arbitrary, capricious or patently absurd such that it resulted in a manifest miscarriage of justice.  (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124.)  We therefore conclude the trial court did not abuse its discretion in denying defendant's motion in limine and excluding evidence related to Cornett's and Pelato's alleged racial bias.

F.  *The Trial Court Properly Denied Defendant's* Pitchess *Motion*

Before trial, defendant filed a *Pitchess* motion in which he alleged, among other things, that Cornett and Pelato were racially biased against him.  Defendant thus requested that the trial court conduct an in camera review of their personnel files to determine if there was any information related to their alleged racial bias or "acts of dishonesty."  The trial court denied the motion.  Defendant filed a motion for reconsideration, which the trial court granted in part as to Cornett.  The trial court ordered the People to produce some of Cornett's records that pertained to his credibility and

20

honesty.[5]  The court, however, denied the rest of defendant's *Pitchess* motion.  We conclude the trial court did not err in doing so.

We review the trial court's order denying a *Pitchess* motion for an abuse of discretion.  (*People v. Memro* (1985) 38 Cal.3d 658, 683.)  To obtain an officer's records under *Pitchess*, the defendant must show good cause for the discovery.  (Evid. Code, § 1043, subd. (b).)  "Good cause for discovery exists when the defendant shows both '"materiality" to the subject matter of the pending litigation and a "reasonable belief" that the agency has the type of information sought.'  [Citation.]  A showing of good cause is measured by 'relatively relaxed standards' that serve to 'insure the production' for trial court review of 'all potentially relevant documents.'  [Citation.]"  (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1016.)  "[A] showing of good cause requires a defendant seeking *Pitchess* discovery to establish not only a logical link between the defense proposed and the pending charge, but also to articulate how the discovery being sought would support such a defense or how it would impeach the officer's version of events."  (*Id*. at p. 1021.)

Defendant failed to make such a showing.  As explained above, defendant's primary defense was that his conduct underlying his convictions was legitimate and in good faith, and thus constitutionally protected.  Put another way, defendant argued he did

---

[5]  Defendant requests that we review the trial court's in camera hearing on defendant's *Pitchess* motion to ensure the trial court ordered the disclosure of all information related to Cornett's credibility.  Our review of the hearing transcript confirms that the trial court ordered the disclosure of all information in Cornett's personnel file that the trial court found related to his credibility.

not have the requisite intent. Cornett and Pelato's alleged racial bias therefore had nothing to do with defendant's defense because it could not have affected defendant's intent.

Defendant also claims evidence of Cornett and Pelato's alleged racial bias was relevant to his defense that he would not have been arrested in the first place but for their animus toward African Americans. Even if true, and even if the trial court abused its discretion in denying defendant's *Pitchess* motion, any error was harmless. (See *People v. Samuels* (2005) 36 Cal.4th 96, 110 ["[E]ven if the trial court erred because defendant made a showing of good cause in support of his [*Pitchess*] request . . . , such error was harmless [under *Watson*]."]; *People v. Memro*, *supra*, 38 Cal.3d at p. 684 ["It is settled that an accused must demonstrate that prejudice resulted from a trial court's error in denying discovery."].)

Although defendant contends Cornett arrested him because Cornett had "an axe to grind" with him and he challenges their "version of events" outlined in their report, defendant does not dispute on appeal that Cornett had probable cause to arrest him based on his text messages. Shortly after the incident at their daughter's school, Jane Doe sent copies of defendant's text messages and the restraining order she obtained against him to the Riverside County Sheriff's Department. At that point, Jane Doe "[was] looking for help" because she thought "things had gotten to the point where there was nothing else for [defendant] to do but actually follow through with the threats." The matter was assigned to Cornett and Pelato. Cornett later obtained a warrant to search defendant's

phone. Based on an interview with Jane Doe, defendant, and a review of defendant's text messages to her, Cornett determined there was probable cause to arrest defendant. In turn, the trial court found defendant's text messages showed there were reasonable grounds to conclude defendant had committed the charged offenses.

On this record, we conclude any information related to Cornett or Pelato's alleged racial animus would not have affected the validity of defendant's arrest or his convictions. Because it is not reasonably probable that defendant would have obtained a more favorable result had the trial court granted his *Pitchess* motion in full, we conclude the trial court did not prejudicially err by denying the motion in part. (*People v. Samuels*, *supra*, 36 Cal.4th at p. 110.)

G. *There Was No Prejudicial Cumulative Error*

Defendant asserts that the cumulative effect of his claimed errors warrants reversal. "'[A] series of trial errors, though independently harmless, may in some circumstances rise by accretion to the level of reversible and prejudicial error.'" (*People v. Cunningham* (2001) 25 Cal.4th 926, 1009.) "The 'litmus test' for cumulative error 'is whether defendant received due process and a fair trial.'" (*People v. Cuccia* (2002) 97 Cal.App.4th 785, 795.)

We have assumed for the sake of argument that the trial court erred by failing to instruct the jury on constitutionally protected speech and denying in part defendant's *Pitchess* motion. We have also assumed that section 653m, subdivision (a) is unconstitutionally vague. The assumed errors were individually harmless, and "were no

23

more prejudicial together." (*People v. Poletti* (2015) 240 Cal.App.4th 1191, 1217.) Even considering the assumed errors in the aggregate, defendant was not deprived of a fair trial or denied due process. "Lengthy criminal trials are rarely perfect, and this court will not reverse a judgment absent a clear showing of a miscarriage of justice." (*People v. Hill* (1998) 17 Cal.4th 800, 844.) Defendant has not made such a showing. As a result, we reject defendant's claim of cumulative error.

IV.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

MILLER
Acting P. J.

MENETREZ
J.